**AMERICAN STEAMSHIP COMPANY,**
**Libelant-Appellant,**

v.

**ERIE–LACKAWANNA RAILROAD COMPANY, Respondent-Appellee.**

**No. 3, Docket 29290.**

United States Court of Appeals
Second Circuit.

Argued Sept. 21, 1965.

Decided Nov. 8, 1965.

Fenton F. Harrison, Buffalo, N. Y. (Coffey, Heffernan & Harrison, Buffalo, N. Y., on the brief), for libelant-appellant.

Arthur E. Otten, Buffalo, N. Y. (Moot, Sprague, Marcy, Landy & Fernbach, Buffalo, N. Y., on the brief), for respondent-appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

This is an *in personam* action, based upon negligence, in which the libelant claims that on September 30, 1959 its steamer, the EDMUND P. SMITH, received hull damage in excess of $100,000 due to the negligence of the respondent, as a commercial wharfinger, because it misrepresented to the officers and crew of the SMITH the conditions and the depth of water of the Buffalo River at the berth at its dock to which the SMITH made fast for loading coal, and because the respondent failed to keep the berth clear of rocks and other obstructions, or give reasonable warning of their presence and location.

Between June 4, 1959 and September 30, 1959, the SMITH had loaded 51 cargoes of coal at respondent's dock. When the SMITH first made use of respondent's wharf, the dock-master advised the captain of the SMITH that there was 21 feet of clear water in the berth but, if the wind were from the east, the depth would be lessened.

There was evidence to prove that on September 30th a fresh northeast wind was blowing and the elevation of the water at respondent's dock was unusually low. The officers of the SMITH were aware of this. On September 20th, 27th and 29th, when the elevation of the water was not as low, they had taken on cargoes of sufficient quantities to lower the draft of the SMITH to the point where the vessel had grounded, though each time it got off without significant damage. It had not grounded at any of the 45 loadings prior to September 20th nor had any other vessel grounded there at any time.

On September 30th, when all of the loading had been completed except for the coal to be put in #6 hatch, the SMITH was aground. To place #6 hatch under the loading spout, it was necessary to move the vessel astern and out from the dock around the area where it had grounded. Its draft at this time was 22.02 feet below the mean water level of Lake Erie and the Buffalo River. Though the SMITH suffered a severe scraping, the movement was accomplished with the vessel's main engine. When free she had a slight list to port, so that the two hundred tons of coal put in #6 hatch were placed on the starboard side. The SMITH was then hard aground. Without lightening the load or waiting for a greater elevation of the water, the master had two tugs drag the SMITH, broad side, over the limestone bottom to the deeper water of the channel.

The trial court found that there was no hidden, unusual or dangerous condition at the berth either in the contour of the river bottom or in the presence of foreign objects, and that the vessel was grounded on the natural, irregular limestone bottom. The case is thus distinguishable from Smith v. Burnett, 173 U.S. 430, 19 S.Ct. 442, 43 L.Ed. 756 (1899) and other cases relied upon by the libelant.

█ Another issue, raised at the trial and pursued by the libelant on this appeal, concerned the statement by the respondent's dock-master to the master of the SMITH that there was 21 feet of clear water in the berth. The dock-master testified that what he had told the captain of the vessel about the depth of the water at the berth, referred to "regular water level" or "normal water level." The libelant argues that what the dock-master actually referred to, and what the captain understood him to mean, was "low water datum" level which would, in effect, show a depth of water at the berth greater than the "normal" or "mean water level" by 1.71 feet, which would have accommodated all drafts of the SMITH at the times of her several groundings. The trial court, however, found that the dock-master referred to "mean water level," and that what he said meant "mean water level." We see no basis for disturbing this finding.

We are also satisfied that the trial court was correct in concluding that the SMITH grounded on the natural bottom and that under the circumstances of this case the respondent was not negligent in not removing a portion of the bottom or warning of an obstruction. Moreover, from the groundings of September 20, 27 and 29 and his knowledge, on each visit, of the elevation of the surface of the water the master of the SMITH knew the maximum draft to which the vessel could be loaded without going aground. Libelant elected to exceed that maximum, and also chose to have tugs drag the SMITH, fully loaded, over the limestone river bottom. The court below found these actions by the libelant to be the sole proximate causes of the damage. On the facts of this case, there is nothing in the law to call for a contrary conclusion.

The judgment of the District Court is affirmed.